IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

ANDRE' LEVERETTE, )
)
        Plaintiff, )
)
vs. ) Case Number CIV-13-163-C
)
ARCHER PRESSURE PUMPING, LLC, )
)
        Defendant. )

## **MEMORANDUM OPINION & ORDER**

On September 8, 2012, an altercation occurred between Joel McVickers and Plaintiff Andre' Leverette, two employees of Defendant Archer Pressure Pumping, LLC, at a sports bar after work.[1] The next day, Plaintiff's immediate supervisor asked Plaintiff to provide a written statement describing his view of what had happened at the sports bar. In his written statement, Plaintiff explained that McVickers repeatedly used the "n" word that night at the sports bar, even after Plaintiff expressed his displeasure over McVickers' use of that word. Plaintiff claimed that after he complained to McVickers, "[h]e got upset and started coming at me in a violent manner and I had to push him away." (Def.'s Mot. for Summ. J., Dkt. No. 43, at 13.) Three of Defendant's employees investigating the incident—Brandon Bush, Operations Supervisor; James Parker, District Manager; and Dee Collinsworth, Human Resources Manager—told Plaintiff that based on his account, "he was fine since it appeared

---

[1] Defendant's workplace violence prevention policy addresses both on-site and off-site violent conduct. See (Def.'s Mot., Dkt. No. 43, Ex. 7 at 1 ("Conduct that threatens, intimidates, or coerces another employee, a customer, or a member of the public at any time, including off-duty periods, will not be tolerated." (emphasis added).)

he was only defending himself and that he could go back to work." (Id.) In contrast, Defendant terminated McVickers. The following week, Plaintiff again met with Bush and Parker. This time, Bush and Parker informed Plaintiff they had obtained a video of the incident at the sports bar and that based on that evidence, the incident did not happen the way Plaintiff described in his written statement. According to Bush and Parker, the video of the altercation showed Plaintiff approaching McVickers from behind and putting his hands on him, rather than only touching McVickers in self-defense. Bush and Parker then terminated Plaintiff. Plaintiff subsequently filed this suit, arguing that his termination constituted unlawful racial discrimination and retaliation for engaging in protected conduct.

## I. LEGAL STANDARD

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it affects the disposition of the substantive claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The party seeking summary judgment bears the initial burden of demonstrating the basis for its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citation omitted). If the movant satisfactorily demonstrates an absence of genuine issue of material fact with respect to a dispositive issue for which the non-moving party will bear the burden of proof at trial, the non-movant must then "go beyond the pleadings and by her own affidavits, or by the

'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. A court considering a summary judgment motion must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000).

## II.  ANALYSIS

Plaintiff claims Defendant is liable for discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and 42 U.S.C. § 1981. Title VII and § 1981 "prohibit[] race discrimination in employment." Richardson v. Gallagher, ___ F. App'x ___, 2014 WL 308956, *7 (10th Cir. Jan. 29, 2014). For example, Title VII makes it unlawful "for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color." 42 U.S.C. § 2000e-2(a)(1). Title VII and § 1981 also protect against retaliation. Title VII specifically provides "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII]." Id. § 2000e-3(a); see also CBOCS W., Inc. v. Humphries, 553 U.S. 442, 451 (2008) (concluding "the view that § 1981 encompasses retaliation claims is indeed well embedded in the law"). Courts analyze discrimination and

3

retaliation claims brought pursuant to Title VII and § 1981 under the McDonnell Douglas[2] burden-shifting framework. Crowe v. ADT Sec. Servs., Inc., 649 F.3d 1189, 1194-95 (10th Cir. 2011) (noting standards are the same for Title VII and § 1981 claims and that the McDonnell Douglas framework applies to both discrimination and retaliation claims).

A. Discrimination

The McDonnell Douglas burden-shifting framework applies when a plaintiff relies on circumstantial evidence to support a charge of discrimination. Daniels v. United Parcel Serv., Inc., 701 F.3d 620, 627 (10th Cir. 2012). Under McDonnell Douglas, Plaintiff has the initial burden of establishing a prima facie case of race-based discrimination. Id.; Kendrick, 220 F.3d at 1226. Plaintiff must demonstrate "'(1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after his discharge.'" Nguyen v. Gambro BCT, Inc., 242 F. App'x 483, 488 (10th Cir. 2007) (quoting Kendrick, 220 F.3d at 1229).[3] If Plaintiff meets his burden, Defendant must then articulate "a legitimate nondiscriminatory reason for its actions." Daniels, 701

---

[2] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

[3] The court in Kendrick acknowledged that the "court has, on occasion, recited a more general [three-prong] test for determining if a plaintiff has established a prima facie case of discriminatory discharge." 220 F.3d at 1227 n.6. However, the court concluded that although "[c]ollapsing the four-part prima facie case of McDonnell Douglas into a three-part test may occasionally be helpful when addressing discrimination claims that either do not fall into any of the traditional categories (e.g., hiring or discharge) or present unusual circumstances," ordinarily, "more structure and guidance can be found in the traditional four prongs of the McDonnell Douglas prima facie test." Id. Because this case presents one of the "traditional categories"—discharge—this Court uses the four-prong test from Kendrick, rather than the shortened three-part version found in Daniels.

F.3d at 627. If Defendant does so, Plaintiff must "introduce evidence that the stated nondiscriminatory reason is merely a pretext for discriminatory intent." Id.

Plaintiff easily satisfies the four-part prima facie case described in Kendrick. First, as an African American, Plaintiff is a member of a protected class. Next, no one disputes that Plaintiff was qualified for his job; indeed, he had received only positive reviews up until the altercation leading to his termination. Finally, Defendant terminated Plaintiff without eliminating his position. In arguing that Plaintiff cannot meet his prima facie burden, Defendant ignores the correct standard and instead argues Plaintiff cannot show "disparate treatment among similarly situated employees," or that "other similarly situated non-African-American employees have been treated differently [by Defendant] than plaintiff." (Def.'s Mot. at 11-12.) However, under Kendrick, Plaintiff does not have to establish disparate treatment at the prima facie stage. Plaintiff has satisfied his burden under the appropriate four-part prima-facie test.

Because Plaintiff made out a sufficient prima facie case, the burden then shifts to Defendant to articulate a legitimate, non-discriminatory reason for Plaintiff's discharge. Defendant has done so. In its brief, Defendant states that "plaintiff was terminated only after [Defendant] became aware (by viewing a videotape) that plaintiff was dishonest about the extent of his participation in an altercation with his co-worker, Joel McVickers." (Def.'s Mot. at 15.) Defendant's workplace policies prohibit both fighting and dishonesty. Thus, Defendant has offered a non-discriminatory explanation for Plaintiff's discharge and the

5

burden shifts back to Plaintiff to prove that the proffered reason was merely pretext for discrimination.

At the final stage of the McDonnell Douglas test, Plaintiff has the burden to "'prove by a preponderance of the evidence that the employer's reasons are a pretext for unlawful discrimination.'" Richardson ___ F. App'x at ___, 2014 WL 308956, *6 (quoting Jaramillo v. Colo. Judicial Dep't, 427 F.3d 1303, 1307 (10th Cir. 2005) (en banc) (per curiam)). "Where an employer advances a number of reasons for an adverse employment action"—as in this case, where Defendant points to its policies against both fighting and dishonesty—the Tenth Circuit "ha[s] adopted a 'general rule' that 'an employee must proffer evidence [showing] each of the employer's justifications is pretextual.'" Id. at *6 (quoting Lobato v. N.M. Env't Dep't, 733 F.3d 1283, 1289 (10th Cir. 2013)). To survive summary judgment and create a genuine issue of material fact with respect to pretext, Plaintiff must offer "evidence showing weakness, implausibility, inconsistency, incoherency, or contradiction in [Defendant's] stated reasons, such that a reasonable jury could find them unconvincing." Daniels, 701 F.3d at 639. No one type of evidence is required to discredit the employer's proffered legitimate reason and establish a discriminatory inference. Trujillo v. PacifiCorp, 524 F.3d 1149, 1158 (10th Cir. 2008). Plaintiff can demonstrate pretext "in a variety of ways, including but not limited to differential treatment of similarly situated employees and procedural irregularities," id., or "'the use of subjective criteria.'" Jaramillo, 427 F.3d at 1308 (quoting Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1217 (10th Cir. 2002)).

6

First, Plaintiff contends Defendant's purported justification is pretextual because he did not actually violate any of Defendant's policies. According to Plaintiff, mere "unwelcome touching" is insufficient to violate Defendant's policy against violence; instead, the policy "requires 'threatening, intimidating or coercive' conduct for off-duty application." (Pl.'s Resp., Dkt. No. 58, at 25.) Further, Plaintiff contends that he did not violate Defendant's policy against dishonesty, as his "fail[ure] to mention the touch on the shoulder" in his written statement describing the altercation was a "trivial" oversight, rather than dishonesty. (Id. at 30.) But, "a court looks at the facts as they appeared to the person making the employment decision because it is the employer's 'perception of the employee's [actions] that is relevant, not [the employee's] subject evaluation of [the facts].'" Richardson, ___ F. App'x at ___, 2014 WL 308956, *7 (quoting Kelley v. Goodyear Tire & Rubber Co., 220 F.3d 1174, 1177-78 (10th Cir. 2000)). Therefore, whether Plaintiff actually violated either of the policies in question is immaterial. The proper inquiry is whether Defendant believed Plaintiff violated the policies and terminated Plaintiff in good faith based on that belief, not whether Defendant acted correctly. Id. at *7 (quoting Lobato, 733 F.3d at 1289) (noting that in a pretext determination, "'[t]he relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs'") (quoting Luster v. Vilsack, 667 F.3d 1089, 1094 (10th Cir. 2011)).

On that question, Plaintiff has demonstrated a genuine issue of material fact exists as to Defendant's good faith reliance on Plaintiff's purported policy violations. For example,

Plaintiff has presented some evidence of "disparate treatment in that there was wide-spread conduct observed by supervisors worse than Plaintiff's and which did not result in discipline." (Pl.'s Resp. at 26.); see Swackhammer v. Sprint/United Mgmt. Co., 493 F.3d 1160, 1167-68 (10th Cir. 2007) (noting one "common method [of showing pretext] is a differential treatment argument, in which the plaintiff demonstrates that the employer 'treated [the plaintiff] differently from other similarly-situated employees who violated work rules of comparable seriousness' in order to show that the employer failed to follow typical company practice in its treatment of the plaintiff") (quoting Kendrick, 220 F.3d at 1230). To show disparate application of Defendant's policy against violence, Plaintiff primarily relies on an incident that occurred between two other employees, Anthony Jackson, an African American, and Lee Smith, a Caucasian. In a sworn statement, John Zaleski, Plaintiff's supervisor, stated that while he was working with Anthony Jackson, Lee Smith came over to help them pick up and push a piece of steel and "pushed [the steel] into [Anthony Jackson's] hand and broke his finger." (Pl.'s Resp., Ex. 6 at 5.) Smith then apparently told Zaleski he had pushed the steel onto Jackson's hand, not Zaleski's, because his "beef" was with Jackson, not Zaleski, and that he wanted Jackson to "go out off location" and fight. (Id.) Although Dee Collinsworth, Defendant's Human Resources Manager, testified that she investigated this incident and concluded it involved a safety violation, not a fight (Def.'s Reply, Dkt. No. 61, Ex. 1 at 4), the Court must view the facts in favor of Plaintiff, the non-moving party, at this stage of the litigation. Kendrick, 220 F.3d at 1225. Additionally, with respect to Defendant's dishonesty justification, Plaintiff points out that the decision-makers

in this case have answered inconsistently with respect to whether lying was part of the basis for his termination and that he is the only person Defendant has ever terminated for being dishonest. (Compare Pl.'s Resp., Ex. 5 at 6-7 (A: "Termination I believe was for fighting." Q: "So not for lying?" A: "I know we discussed that, but that wasn't the main cause of the termination. The termination was for fighting.") with id., Ex. 9 at 16 (Q: "You claim that [Plaintiff] was fired because he lied about his account of the events?" A: "Yes."); see also id., Ex. 2 at 4-5 (listing Plaintiff as the only employee terminated for lying).) Plaintiff has presented enough evidence of inconsistency to create a genuine issue of material fact of pretext and survive summary judgment on his claim of racial discrimination.

B. Retaliation

Plaintiff has also asserted a retaliation claim against Defendant. To establish a prima facie case of retaliation under McDonnell Douglas, Plaintiff must show: "(1) '[he] engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action.'" Daniels, 701 F.3d at 638 (quoting Hinds v. Sprint/United Mgmt. Co., 523 F.3d 1187, 1202 (10th Cir. 2008)). Plaintiff "engaged in protected opposition to discrimination" when he complained about racial comments to Dee Collinsworth on August 1, 2012, and suffered a "materially adverse" employment action when Defendant terminated him shortly thereafter, on September 17, 2012. Defendant contends, however, that a causal connection does not exist between the two events.

To demonstrate the requisite causal connection, Plaintiff must produce "'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action,'" or temporal proximity. Conroy v. Vilsack, 707 F.3d 1163, 1181 (10th Cir. 2013) (citations omitted). Although there is no "precise temporal line for purposes of determining whether the requisite proximity is present to establish—at the prima facie stage—the causation element . . . [i]t appears clear that, if the adverse action occurs in a brief period up to one and a half months after the protected activity, temporal proximity alone will be sufficient to establish the requisite causal inference." Id. Because Defendant terminated Plaintiff approximately six weeks after Plaintiff's protected activity, Plaintiff has established a sufficient causal connection at the prima facie stage. As Defendant and Plaintiff's arguments about pretext are the same as for Plaintiff's discrimination claim, the Court does not need to re-hash its previous discussion. Summary judgment for Defendant is inappropriate, given the evidence Plaintiff has presented and the requirement that the Court view all the evidence and resulting inferences in Plaintiff's favor.

### III.  CONCLUSION

Accordingly, the Court hereby DENIES Defendant Archer Pressure Pumping LLC's Motion for Summary Judgment (Dkt. No. 43).

IT IS SO ORDERED this 2nd day of April, 2014.

ROBIN J. CAUTHRON
United States District Judge